OPINION OF THE COURT
Florio, J.P.
On these appeals, we are called upon to determine whether a provision of the guaranty at issue, which allowed for full recourse liability against the guarantors upon the happening of a “springing recourse event” under the attendant loan agreement, is, in effect, a liquidated damages provision which imposes an unenforceable penalty. Viewing the unambiguous terms of the loan and guaranty under existing jurisprudence, we hold that the provision merely affixes liability, and is not, in effect, a liquidated damages provision that imposes an unenforceable penalty.
The plaintiff, G3-Purves Street, LLC (hereinafter the lender), financed the development of certain real property by the defendant, Thomson Purves, LLC (hereinafter the borrower), via a mortgage-backed loan. The loan was supported by a Guaranty of Recourse Obligations (hereinafter the guaranty) entered into between the defendants Baruch Singer and David Weiss (hereinafter the guarantors) and the lender. Pursuant to the loan agreement, the borrower was required to, among other things, avoid allowing liens or other encumbrances to be placed upon the mortgaged premises by paying real estate taxes and other charges as they became due. The loan agreement provided that, under most circumstances, the loan was nonrecourse, but the loan agreement included “carve-out” clauses which provided for full recourse against the borrower based upon, among other things, the occurrence of certain “springing recourse events.” Specifically, the loan agreement stated:
“Lender’s agreement not to pursue personal liability of Borrower as set forth above SHALL BECOME NULL AND VOID and shall be of no further force and effect, and the Debt shall be fully recourse to *39 Borrower in the event that one or more of the following occurs (each, a “Springing Recourse Event”): . . . (iii) the occurrence of any condition or event described in . . . Section 8.1 (f) hereof, or (iv) Borrower creates, incurs, assumes, permits or suffers to exist any Lien on all or any portion of the Property ... or incurs any indebtedness other than the Permitted Indebtedness.”
Section 8.1 (f) of the loan agreement stated: “8.1 Events of Default. An ‘Event of Default’ shall exist with respect to the Loan if any of the following shall occur: ...(f) Borrower . . . or Guarantor shall make an assignment for the benefit of creditors, or shall generally not be paying . . . debts as they become due.”
The guaranty, which was executed contemporaneously with the loan agreement, stated that the guarantors agreed “absolutely and unconditionally” to pay certain “Joint and Several Obligations.” These obligations included, “(ii) from and after the date that any Springing Recourse Event occurs, payment of all the Debt as and when the same is due in accordance with the Loan Documents (and whether accrued prior to, on or after such date).”
It is undisputed that approximately 16 months after the loan agreement and guaranty were entered into, the lender accelerated the loan’s maturity date when the borrower, in violation of the loan agreement, failed to pay certain real estate taxes assessed on the mortgaged premises. The lender thereafter commenced this action, inter alia, to foreclose the mortgage and to obtain a deficiency judgment against the guarantors, alleging, among other things, that “springing recourse events” had occurred, including the filing of certain liens against the property. Notably, no party contests the lender’s right to a judgment of foreclosure and sale of the property; the issue on this appeal is whether the lender is entitled, pursuant to the guaranty, to recover from the guarantors the total amount due on the mortgage.
The lender moved for summary judgment on the complaint, and the guarantors cross moved for summary judgment dismissing the complaint insofar as asserted against them. In opposition to the lender’s motion and in support of their cross motion, the guarantors contended, in pertinent part, that the parties to the guaranty only intended to impose full liability for the entire debt upon the guarantors if they or the borrower committed an *40 affirmative act that interfered with the lender’s ability to recover the property. They argued that the provision of the guaranty that imposed full liability on them for the entire debt upon the occurrence of a springing recourse event was, in effect, a liquidated damages provision that imposed an unenforceable penalty, as the remaining balance on the loan was grossly disproportionate to the amounts of the liens that had been filed against the subject property.
The Supreme Court granted the lender’s motion and denied the guarantors’ cross motion, finding that the subject carve-out clauses of the loan agreement were enforceable. As to the main issue on appeal, the Supreme Court concluded that the guaranty allowed for full recourse liability against the guarantors if the borrower committed an act delineated in the “springing recourse event” portions of the loan agreement, and that the subject provision of the guaranty was not, in effect, a liquidated damages provision that imposed an unenforceable penalty. We agree.
It is well settled that a “written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms” (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; see Etzion v Etzion, 84 AD3d 1015, 1016 [2011]). Where the terms of an agreement are unambiguous, interpretation is a question of law for the court (see Aivaliotis v Continental Broker-Dealer Corp., 30 AD3d 446, 447 [2006]). “ ‘[W]hen interpreting a contract, the court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized’ ” (Zuchowski v Zuchowski, 85 AD3d 777, 778 [2011], quoting Herzfeld v Herzfeld, 50 AD3d 851, 851 [2008] [some internal quotation marks omitted]).
Furthermore, “[a] guaranty is a contract, and in interpreting it we look first to the words the parties used” (Louis Dreyfus Energy Corp. v MG Ref. & Mktg., Inc., 2 NY3d 495, 500 [2004]). A guaranty must be read in the context of the loan agreement, which was executed contemporaneously (see Greenwich Capital Fin. Prods., Inc. v Negrin, 74 AD3d 413, 415 [2010]). “A guaranty must be construed ‘in the strictest manner’ ” (Arlona Ltd. Partnership v 8th of Jan. Corp., 50 AD3d 933, 933 [2008], quoting White Rose Food v Saleh, 99 NY2d 589, 591 [2003]), and a guarantor should be bound to the express terms of the written guaranty (see 665-75 Eleventh Ave. Realty Corp. v Schlanger, 265 AD2d 270, 271 [1999]; Walker v Roth, 90 AD2d 847 [1982]).
*41 Generally, a nonrecourse loan agreement containing carve-out provisions similar to the ones contained in the subject loan agreement is valid and enforceable (see First Nationwide Bank v Brookhaven Realty Assoc., 223 AD2d 618 [1996]). Here, it is undisputed that the loan agreement entered into is a nonrecourse loan which largely exempts the borrower and guarantors from personal liability for the remaining debt in the event of a default, and leaves the lender with the sole recourse of repossession of the property which served as security under the loan agreement. However, contrary to the guarantors’ contention, the carve-out language in the loan agreement was unambiguous and provided for personal liability for a violation of certain enumerated exceptions, including defined “springing recourse events.” These exceptions included the failure to pay taxes, allowing liens to be asserted against the property, or the failure to pay debts as they became due, and one or more of these exceptions were triggered, which led to acceleration of the debt. As for the guaranty itself, we find that it was also clear and unambiguous in its terms and it defined the circumstances under which the guarantors would become liable for the debt of the borrower. Further, both the loan agreement and the guaranty were entered into by sophisticated business parties negotiating at arm’s length (see generally Hall v Paez, 77 AD3d 620, 621 [2010]).
The guarantors’ primary contention on appeal is that because the full amount sought by the lender under the loan is vastly out of proportion to the amount of the liens resulting in the borrower’s defaults, the subject provision of the guaranty was, in effect, a liquidated damages provision that was unenforceable as a penalty. However, contrary to the guarantors’ contention, we find that the subject provision of the guaranty was not, in effect, a liquidated damages provision that imposed an unenforceable penalty.
A clause in a contract is one for liquidated damages if “the amount of actual loss is incapable or difficult of precise estimation” and the stipulated amount of damages “bears a reasonable proportion to the probable loss” (Truck Rent-A-Ctr. v Puritan Farms 2nd, 41 NY2d 420, 425 [1977]; see BDO Seidman v Hirshberg, 93 NY2d 382, 396 [1999]; Vernitron Corp. v CF 48 Assoc., 104 AD2d 409 [1984]). Whether a contractual provision represents a liquidated damages provision is a question of law *42 for the court to resolve (see United Tit. Agency, LLC v Surfside-3 Mar., Inc., 65 AD3d 1134, 1135 [2009]). Liquidated damages provisions will be upheld only if the amount fixed is a “reasonable measure of the probable actual loss in the event of a breach” (Central Irrigation Supply v Putnam Country Club Assoc., LLC, 57 AD3d 934, 935 [2008]). If the amount fixed is grossly disproportionate to the amount of actual damages, then the liquidated damages provision amounts to a penalty and will not be enforced (see BDO Seidman v Hirshberg, 93 NY2d at 396; Truck Rent-A-Ctr. v Puritan Farms 2nd, 41 NY2d 420 [1977]; Central Irrigation Supply v Putnam Country Club Assoc., LLC, 57 AD3d at 935-936).
Here, the Supreme Court correctly determined that the lender demonstrated, prima facie, that the subject provision of the guaranty was not, in effect, a liquidated damages provision that imposed an unenforceable penalty, and the guarantors failed to raise a triable issue of fact in response (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). The subject provision of the guaranty, when read in conjunction with the loan agreement entered into contemporaneously, operates to define the terms and conditions of personal liability as opposed to affixing probable damages (see CSFB 2001-CP-4 Princeton Park Corporate Ctr., LLC v SB Rental I, LLC, 410 NJ Super 114, 121, 980 A2d 1, 5 [2009]; Heller Fin., Inc. v Lee, 2002 WL 1888591, *4, 2002 US Dist LEXIS 15183, *12-14 [ND 111 2002]). Additionally, the guaranty explicitly referenced the loan agreement, and further, the guaranty contained language stating that the lender was making the underlying loan on the condition that the guarantors execute the guaranty and that the guarantors would “materially benefit from Lender’s agreeing to make the Loan.” This demonstrates that the carve-out provisions were bargained for as part of the guaranty. Also, the carve-out provisions affected the value of the collateral that secured the loan, as they afforded the lender the protection required by causing the borrower and the guarantors to be personally liable, thus enabling the lender to look beyond the mortgaged property for repayment of the loan (see CSFB 2001-CP-4 Princeton Park Corporate Ctr., LLC v SB Rental I, LLC, 410 NJ Super at 121, 980 A2d at 5).
Furthermore, the subject provision of the guaranty does not provide for liquidated damages, as the loan agreement only provides for the recovery of actual damages incurred by the lender, to wit, the debt remaining on the unpaid loan at the *43 time of default, which is an amount fixed by the terms of the loan and is not speculative or incalculable (see CSFB 2001-CP-4 Princeton Park Corporate Ctr., LLC v SB Rental I, LLC, 410 NJ Super at 122, 980 A2d at 5; Heller Fin., Inc. v Lee, 2002 WL 1888591, *5, 2002 US Dist Lexis 15183, *15-16). As previously stated, this action involves a loan made by the lender to the borrower, which was secured by the guaranty. The guarantors received the full benefit of the loan and the lender made the loan with the assurance of full repayment. The lender thereafter commenced this action seeking the full remaining balance of the loan at the time of default, which constitutes its actual damages (see CSFB 2001-CP-4 Princeton Park Corporate Ctr., LLC v SB Rental I, LLC, 410 NJ Super at 122, 980 A2d at 5).
Therefore, we find that the subject provision of the guaranty was not, in effect, a liquidated damages provision that imposed an unenforceable penalty.
The guarantors’ remaining contentions are without merit.
Accordingly, the appeal from the decision is dismissed, as no appeal lies from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509 [1984]), and the order is affirmed insofar as appealed from.
Belen, Roman and Sgroi, JJ., concur.
Ordered that the appeal from the decision is dismissed, as no appeal lies from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509 [1984]); and it is further,
Ordered that the order is affirmed insofar as appealed from; and it is further,
Ordered that one bill of costs is awarded to the respondent.